**FILED**

MAR - 9 2010

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES *ex rel.* RIGSBY | ) | |
| Relators and | | Case: 1:10-mc-00164 |
| Counterclaim Defendants | | Assigned To : Kennedy, Henry H. |
| | | Assign. Date : 3/9/2010 |
| v. | | Description: Miscellaneous |
| STATE FARM MUTUAL | ) | **Underlying Litigation:** |
| INSURANCE COMPANY, ~~et al.~~ | ) | |
| | ) | **Case No. 1:06cv4333 LTS-RHW** |
| | ) | **United States District Court** |
| Defendant and | ) | **Southern District of Mississippi** |
| Counterclaim Plaintiff | ) | |

## MOTION TO QUASH OR MODIFY SUBPOENA FOR DOCUMENTS

Non-party The Rendon Group, Inc. ("TRG") by counsel, moves for entry of an order

pursuant to Fed. R. Civ. Proc. 45(c)(3), quashing, or in the alternative modifying and limiting,

the subpoena *duces tecum* issued by State Farm Fire and Casualty Company ("State Farm").  A

copy of the subpoena is attached as Exhibit A to the Memorandum filed in support of this

motion.

TRG further requests that if this motion is granted, the Court award attorneys fees

pursuant to Rule 45(c)(1).

The grounds in support of this motion are set forth in detail in the Memorandum and

attached exhibits, as well as the Objections previously served on State Farm, which are

incorporated herein by reference.

Counsel for TRG certifies pursuant to Local Civil Rule 7(m) that counsel for TRG and

State Farm have conferred regarding the issues raised in TRG's Objections to the subpoena and

**RECEIVED**

in this motion in writing, and by telephone, on multiple occasions between January 22, and

February 19, 2010, but that the issues were not fully resolve.  TRG anticipates that this motion

will be opposed by State Farm.

WHEREFORE, The Rendon Group, Inc., requests that its Objection to the subpoena be

sustained, and that the Court enter and order quashing, or in the alternative modifying and

limiting, the subpoena to provide movant with the protections afforded to non-parties by Rule 45.

Respectfully submitted,

Russell J. Gaspar, D.C. Bar No. 229781
Andrew Wible, D.C. Bar No. 983391
COHEN MOHR, LLP
Suite 504, 1055 Thomas Jefferson St., N.W.
Washington, D.C.  20007
(202) 342-2550 (Telephone)
(202) 342-6147 (Facsimile)
rgaspar@cohenmohr.com

Attorneys for The Rendon Group, Inc.

### Certificate of Service

I hereby certify that on this 8th day of March, 2010, I served true copies of the foregoing
Motion to Quash, along with the supporting Memorandum, exhibits and proposed Order, by
electronic mail and first-class postage prepaid mail on the following:

Robert C. Galloway
Bob.galloway@butlersnow.com
Butler, Snow, O'Mara, Stevens & Cannada, PLLC
P.O. Box 6010
Ridgeland, Mississippi  93158

Michael B. Beers
mbeers@beersanderson.com
Beers, Anderson, Jackson, Patty & Fawal, P.C.
P.O. Box 1988
Suite 100, 250 Commerce Street
Montgomery, Alabama  36102

      Attorneys for State Farm Fire and Casualty Company


C. Maison Heidelberg
maison@heidelbergpa.com
Maison Heidelberg P.A.
Suite 220, 795 Woodlands Parkway
Ridgeland, Mississippi  39157

Scott D. Gilbert
gilberts@gotofirm.com
Gilbert LLP
Suite 700
11 New York Avenue, N.W.
Washington, D.C.  20005

      Attorneys for Relators


Stan Harris
Felicia.adams@usdoj.gov
Office of the United States Attorney
Suite 500, 188 East Capitol Street
Jackson, Mississippi  39201

      Attorneys for the United States


Larry G. Canada
lcanada@gtbs.com
Galloway, Johnson, Tompkins, Burr & Smith
Suite 4040. 701 Poydras Street
New Orleans, Louisiana  70139

      Attorneys for Haag Engineering Co.

Robert D. Gholson
Gholson@gbeolaw.com
Gholson, Burson, Entrekin & Orr, P.A.
P.O. Box 1289
535 North 5th Avenue
Laurel, Mississippi  39441-1289

Attorneys for Forensic Analysis Engineering Corporation

Russell J. Gaspar

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

**FILED**

MAR - 9 2010

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES *ex rel.* RIGSBY | ) | |
| | ) | |
| **Relators and** | ) | |
| **Counterclaim Defendants** | ) | |
| | ) | |
| v. | ) | MISC. No. ___*10 - 164*___ |
| | ) | |
| STATE FARM MUTUAL | ) | Underlying Litigation: |
| INSURANCE COMPANY, *et al.* | ) | |
| | ) | No. 1:06cv4333 LTS-RHW |
| **Defendant and** | ) | United States District Court |
| **Counterclaim Plaintiff** | ) | Southern District of Mississippi |

MEMORANDUM IN SUPPORT OF
MOTION TO QUASH SUBPOENAS FOR DOCUMENTS

The Rendon Group, Inc., ("TRG"), by counsel, files this memorandum in support of its

motion pursuant to Fed. R. Civ. Proc. 45(c)(3) to quash, or in the alternative to modify, a

subpoena for documents served by State Farm Fire and Casualty Company ("State Farm") in the

underlying litigation.   A copy of the subpoena is attached as **Exhibit A** hereto.

As TRG will demonstrate below, the subpoena:  (1) requires the production of documents

that are not relevant to the claims and defenses of the parties in the underlying litigation; (2)

seeks documents that are or may be subject to the attorney-client privilege and/or the attorney

work product doctrine; (3) seeks documents that contain the confidential commercial information

of TRG; and (4) otherwise subjects TRG to undue burden and expense.

**I.      The Underlying Litigation**

The Underlying Litigation is a *qui tam* action brought by Cori and Kerri Rigsby as

Relators under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA").  The action was filed in

April 2006 and was unsealed in August 2007.  The Amended Complaint (copy attached as

**Exhibit B**) alleges that that State Farm (and other insurance companies that have since been

dismissed), in collusion with certain claims adjusting and engineering consultants, falsified

information relating to property damage claims submitted in the wake of Hurricane Katrina in

order to attribute the losses to flood and storm surge, not wind or related damage from debris.

The effect, the Relators allege, was to unlawfully shift a significant portion of the losses from

State Farm's property insurance coverage to coverage under Standard Flood Insurance Policies

("SFIP") underwritten by the United States Government.

State Farm in turn filed a counterclaim against the Relators alleging fraud, violations of

the Computer Fraud and Abuse Act, conspiracy and breach of contract.  The claims all arise from

the core allegation that the Relators, while employed by E.A. Renfroe & Company[1] as claim

adjusters supporting State Farm, misappropriated confidential State Farm information relating to

Hurricane Katrina claims and improperly disclosed it to lawyers representing Hurricane Katrina

claimants in litigation against State Farm, including in particular the Scruggs Law Firm of

Oxford, Mississippi.  A copy of State Farm's Answer and Counterclaim is attached as **Exhibit

C**.[2]

Pretrial motions practice in the Underlying Litigation has substantially narrowed the

scope of the Relators' original FCA claims.  In particular, on August 10, 2009, the District Court

found that the Relators were "original sources" of only one potential false claim involving State

Farm, involving hurricane-related damage to the residence of Thomas and Pamela McIntosh.

---

[1]      E.A. Renfroe was initially named by the Relators as a defendant in the Underlying Litigation, but
was dismissed voluntarily in May 2009.

[2]      The Scruggs Law Firm and several other firms initially represented the Relators in the Underlying
Litigation.  However, by Orders entered in March and May 2008, these law firms either were granted leave to
withdraw or were disqualified.  TRG understands that lead counsel for the Relators is currently Gilbert LLP of
Washington, D.C.

*See* 31 U.S.C. § 3730(e)(4). Accordingly, the District Court limited the presentation of evidence in the trial of the qui tam case to "facts relevant to the McIntosh claim." **Exhibit D**, Order ¶ 5, Memorandum Opinion at 2-8, 10.[3]

Furthermore, by Order entered September 24, 2009, the District Court bifurcated the trial of the Underlying Litigation and stayed all discovery on State Farm's Counterclaims until after the trial of the *qui tam* action. The *qui tam* action is currently scheduled to be tried in December 2010. **Exhibit E**, attached (bifurcation Order dated September 24, 2009; Case Management Order entered October 29, 2009).

## II.    Related Litigation

In addition to the Underlying Litigation, here has been substantial related litigation involving State Farm, the Relators and the McIntosh claim. A brief description of these cases shows that State Farm already has obtained very extensive discovery relating to both the FCA claim involving the McIntosh residence and the Relators' conduct that gives rise to the Counterclaims.

First, as the District Court's September 24, 2009, Order notes (**Exh. E** at 1), the "propriety of the Relators having taken possession of these documents [*i.e.*, the State Farm documents at issue in the Counterclaims] was litigated in an Alabama proceeding, *E.A. Renfro & Company, Inc. v. Cori Rigsby, et al.*" In fact, the Alabama litigation resulted in an order of permanent injunction requiring the Rigsbys to return the State Farm documents, as well as an order granting partial summary judgment to Renfroe on the issue of the Rigsbys' liability for breach of their contract of confidentiality in taking the documents. *See* Case No. 2:06-cv-1752-

---

[3]    The discussion at pp. 2-8 of the Memorandum Opinion provides a good summary of the *qui tam* claims and defenses and the potential evidence relating to them. Notably, the District Court observed that, in light of the substantial discovery already taken in the case, he did not believe that "there will be much in the way of additional preparation necessary to bring this case to trial." *Id.* at 10.

SLB, Northern District of Alabama, Southern Division, ECF Documents Nos. 60 (Mem. Op. and

Preliminary Injunction); 402, 403 (Mem. Op. and Order granting partial summary judgment);

404 (Order of permanent injunction); 424 (Stipulated Final Judgment, incorporating prior

rulings).

Second, Thomas and Pamela McIntosh – State Farm's insureds in the sole remaining

element of the underlying *qui tam* litigation – sued State Farm and several other companies,

including E.A. Renfroe and Forensic Analysis Engineering Corporation (also a defendant in the

Underlying Litigation) for negligence, breach of contract, bad faith and fraud in connection with

the adjusting and payment of their Hurricane Katrina property damage claims.  Although the

case ultimately was settled and dismissed, it resulted in an order that, in relevant part,

disqualified the Rigsbys from appearing as witnesses in Hurricane Katrina claims litigation

against State Farm and also disqualified counsel for the McIntoshes (including, *inter alia*, the

Scruggs Law Firm), due to the actions of the Rigsbys in misappropriating confidential State

Farm information and providing it to the attorneys in exchange for substantial consideration.  *See*

Case No. 1:06-cv-01080-LTS, Southern District of Mississippi, Southern Division, ECF

Documents Nos. 194 (First Amended Complaint); 1172 and 1172 (Mem. Op. and Order granting

motion to disqualify).

Thus, the parties to the Underlying Litigation are far from strangers to each other.  They

are longstanding legal antagonists who have engaged in significant and protracted prior litigation

over the very matters that form the basis of the claims and defenses in the Underlying Litigation.

The outcome of that litigation suggests that there is a significant likelihood that there will be

preclusive effect in the Underlying Litigation.

### III.   The Subpoena to The Rendon Group

TRG is a strategic and crisis communications and public affairs consulting firm based in Washington, D.C.  From late December 2006 until January 2008 TRG provided strategic counseling and communications support services in connection with Hurricane Katrina-related litigation to the Scruggs Law Firm and a related entity, the Scruggs Katrina Group.

In or about December 30, 2009, State Farm issued a subpoena *duces tecum* to TRG, requiring the production of documents and electronically stored information enumerated in 20 requests.  The document requests in the subpoena fall into five basic categories:

(1)     Requests 1-9 ask for communications between TRG and nine law firms, all of which apparently were involved in Hurricane Katrina claim litigation against State Farm, and several of which represented the Relators in the underlying litigation;

(2)     Requests 10-13 ask for documents relating to payment from four of the law firms to TRG;

(3)     Request 14 asks for documents concerning the Relators;

(4)     Request 15 asks for documents concerning communications between several of the law firms and/or the Relators and any media outlets or representatives since the date of Hurricane Katrina; and

(5)     Requests 16-20 ask for documents concerning two State Farm companies, the E.A. Renfroe claims adjusting consultant and two engineering companies that are defendants in the *qui tam* case, including (but not limited to) documents relating to Hurricane Katrina claims or cases.

On or about January 19, 2010, TRG timely served objections to the subpoena on State Farm pursuant to Rule 45(c)(2)(B).  A copy of TRG's Objections is attached as **Exhibit F.**

Following service of the Objections counsel for TRG and State Farm have engaged in substantial

verbal and written communication in an effort to resolve or narrow the issues raised by TRG in

its objections.  While these communications have resulted in a slight narrowing of the areas of

disagreement, many issues remain unresolved.  Accordingly, and for the reasons set forth below,

TRG requests that the subpoena be quashed, or, in the alternative, substantially modified and

narrowed.

     IV.    **<u>Argument</u>**

          A.    **<u>Applicable Legal Standard</u>**

Fed. R. Civ. Proc. 45(c) provides for the protection of persons subject to subpoena.  It

requires that the party issuing a subpoena affirmatively take "reasonable steps" to "avoid

imposing undue burden and expense" on the person subject to subpoena.  It allows the person

subject to subpoena to file objections to the subpoena, and if production ultimately is ordered as

a result of a motion to compel, requires that the order protect the person from "significant

expense resulting from compliance."  Rule 45(c)(2)(B).  In addition, it permits a subpoenaed

person to file a motion to quash if the subpoena fails to allow a reasonable time to comply,

requires the production of privileged or other protected matter, subjects the subpoenaed person to

undue burden, or requires the disclosure of a trade secret or confidential commercial information.

Rule 45(c)(3)(A), (B).

Although a relevance requirement is not included in the text of Rule 45, it is settled law

that a third-party subpoena is limited in scope by the relevance requirements of Rule 26(b)(1).

*Hesco Bastion Ltd. v. Greenberg Traurig LLP*, No. 09-0357, 2009 WL 5216932 *3-4 (D.D.C.,

Dec. 23, 2009).  Therefore, absent a special showing of good cause, State Farm is entitled to

request only those documents that are "relevant to any party's claim or defense."  While the term

"relevant" must be construed liberally at a discovery stage of the litigation, *Covertino v. United States Department of Justice*, 565 F.Supp.2d 10, 12 (D.D.C. 2008), it must also be based on a legitimate need arising from the prosecution or defense of a pending claim. *Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, 245 F.R.D. 26, 29-30 (D.D.C. 2007).

Furthermore, Rule 45(c)(3)(A)(iv) requires that the Court quash a subpoena that subjects non-party to undue burden. In this regard, a subpoena issued to a non-party imposes an undue burden when it is overbroad and not limited to material relevant to the claims and defenses of the parties to the litigation. *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008). Thus, the Court is charged with balancing the burden of the subpoena on the non-party with the issuing party's need for, and the relevance of, the information sought. *Flanagan v. Wyndham International Inc.*, 231 F.R.D. 98, 102-03 (D.D.C. 2005).

### B.    The Subpoena Should Be Quashed

Under the foregoing legal standards the State Farm subpoena is materially overbroad and imposes an undue burden on TRG. In addition, many of the Requests raise potential issues regarding the applicability of the attorney-client privilege and/or the attorney work product doctrine that could prevent disclosure of certain documents, even if relevant. Finally, some of the documents contain TRG's confidential commercial and financial information, the production of which should not be required unless clearly relevant to a pending claim or defense, and then only if an appropriate protective order has been entered to prevent injury to TRG from improper disclosure.

As the discussion above has demonstrated, there is only one claim currently pending before the District Court in the Underlying Litigation as to which discovery may be conducted: whether State Farm submitted a false claim to the United States in connection with the McIntosh

claim for property damage suffered in Hurricane Katrina.  Even as limited in part by discussions

between counsel prior to the filing of this motion, as discussed below, the information sought

from TRG by State Farm is not relevant to this claim or any of State Farm's defenses to the claim

(*see* Exh. B at 1-42).  In addition, the substantial prior litigation involving the same parties and

claims reinforces the lack of relevance of the information sought by State Farm's subpoena and

demonstrates that State Farm has little or no legitimate need for the information.  The balancing

test required by *Flanagan* clearly tips in favor of TRG and requires that the subpoena be

quashed.

### 1.    Communications with Attorneys

Discussions between counsel have resulted in State Farm's agreement to limit Requests 1-

9 and 15 of the subpoena to documents concerning the following matters:  Thomas and Pamela

McIntosh generally; the insurance claims that the McIntoshes submitted regarding their

residence; the Underlying Litigation; the Relators; and E.A. Renfroe and Company, Forensic

Analysis & Engineering Corporation and Haag Engineering Company insofar as the documents

relate to the McIntosh insurance claims.

Of the nine law firms covered by these requests, only three:  the Scruggs Law Firm;

Graves, Bartle & Marcus; and Bartimus, Frickleton, Robertson & Gorney (Requests 2-4) appear

to have any arguable connection with the specified matters as they relate to the Underlying

Litigation.  These firms were counsel to the Relators in the Underlying Litigation until they

withdrew or were disqualified in 2008.  As to these firms, State Farm apparently is requesting *all*

communications relating to the McIntoshes and the Rigsbys, whether or not they bear on the *qui*

*tam* case in its current posture, and *all* communications relating to the Underlying Litigation,

whether or not they bear on the one false claim that remains alive for trial.  (As discussed above,

discovery has been stayed with respect to State Farm's Counterclaims). This is clearly well outside the permissible scope of relevant inquiry under Rules 26 and 45 -- "nonprivileged matter that is relevant to any party's claim or defense" -- and is therefore overbroad and burdensome under governing law.

The remaining six law firms appear either to have been counsel for the Rigsbys or the McIntoshes in the related litigation discussed above, or counsel to claimants in unrelated Hurricane Katrina litigation against State Farm. As to these six law firms, TRG's communications (if any) concerning unrelated litigation, or to related litigation that is now concluded and about which State Farm in any event already has extensive information, is even further outside the bounds of relevance.

Furthermore, applicable to both categories of attorney communications is the requirement of Rule 45(c)(3)(A)(iii) that the Court quash or modify a subpoena that demands the production of privileged matter. In *F.T.C. v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002), the D.C. Circuit held that the attorney-client privilege extended to communications between a party or its lawyer and a public relations or government affairs consultant engaged by the party or lawyer, recognizing that an attorney's duties in furtherance of the client's interests may necessitate seeking the advice of such consultants. *Accord, In re Grand Jury Subpoenas*, 265 F.Supp.2d 321, 330-31 (S.D.N.Y. 2003) (communications between attorneys and public relations consultants made in furtherance of a client's interest may be protected by the attorney-client privilege). *See Suesbury v. Caceres,* 840 A.2d 1285, 1288 n.7 (D.C. App. 2004) (recognizing the holding in *In re Grand Jury Subpoenas).*

These principles apply with particular force to the subpoena in this case, because it is clear that, even as limited, State Farm is seeking TRG's communications with lawyers that <u>relate</u>

directly to the lawyers' clients, the litigation that was or is being prosecuted for those clients, and the defendants in those cases.

TRG understands that it was engaged to be an "integral member[] of the team assigned to deal with issues [that] . . . were completely intertwined with [the] litigation and legal strategies" involved in Hurricane Katrina-related litigation. *GlaxoSmithKline, supra.* As such it believes that its communications with counsel for the Relators, the McIntoshes or other litigants that have sued State Farm, as described in Requests 1-9 and 15, are or may be subject to the attorney-client privilege and the attorney work product doctrine. At the very least, therefore, before TRG is compelled to produce such documents the Court should afford the clients and lawyers in question the opportunity to review the TRG communications subject to the subpoena so that claims of privilege or work product can appropriately be asserted and if necessary ruled upon.

Finally, at least some of TRG's communications with the enumerated law firms contain material that TRG regards to be its trade secrets or confidential commercial information. Rule 45(c)(3)(B)(i) provides protection against the disclosure of such information, and authorizes the Court to either quash or modify the subpoena. Assuming (without conceding) that TRG has had properly relevant, non-privileged and otherwise responsive communications with law firms, to the extent that such communications contain TRG's trade secrets or confidential commercial their production must be conditioned upon entry of an appropriate protective order.

## 2.   TRG Payment Records

State Farm has advised counsel for TRG that it will not "press" for the production of the billing, payment and other financial records covered by Requests 10-13 of the subpoena, but it has not withdrawn them.

As TRG understands State Farm's position, State Farm has <u>not</u> limited Requests 10-13 to the specific matters it agreed to apply to Requests 1-9 and 15.  Therefore, if it decides to "press" Requests 10-13 at some future time, they extend to all matters covered by the TRG engagement, whether or not they relate to the claims and defenses in the Underlying Litigation.  For this reason it is apparent that Requests 10-13 are materially overbroad and burdensome and should be quashed.  Even if these Requests are somehow limited to payments made with respect to services rendered in connection with the Underlying Litigation (assuming that such an allocation was ever made), it is impossible to understand how they are relevant to the <u>one</u> pending *qui tam* claim or State Farm's defenses to that claim.

Finally, TRG's billing, payment and financial records are confidential commercial information that, if required to be produced, is entitled to protection from improper disclosure under Rule 45(c)(3)(B)(i).

### 3.      Documents Concerning the Relators and State Farm

Counsel for State Farm has advised counsel for TRG that it will <u>not</u> agree to limit Request 14 (documents concerning the Relators generally) and 16 and 17 (documents concerning two State Farm companies) in any way, either as to scope or time.  Thus, State Farm is insisting that TRG produce every document in its possession concerning the Relators, whether or not it bears on the one remaining false claim in the Underlying Litigation, or even on the Underlying Litigation at all.  It is also insisting that TRG produce every document in its possession concerning the two State Farm companies insofar as the documents related in any way to Hurricane Katrina, whether or not they relate to the McIntosh claim or the Underlying Litigation.  These requests are indisputably far broader than what is relevant to the claims and defenses of the parties in the Underlying Litigation.

In this regard, it is important to recall two factors discussed above. First, the District Court has stayed discovery with respect to State Farm's counterclaims in the Underlying Litigation. Even if some portion of Requests 14, 16 and 17 might be deemed relevant to the State Farm Counterclaims, it is at the very least premature by many months. Second, State Farm and its claims adjusting consultant, E.A. Renfroe, have had a substantial litigation history with the Rigsbys and undoubtedly have conducted discovery into every conceivably relevant aspect of their lives and conduct, especially as they concern the Relators' knowledge of State Farm's handling of the McIntosh and other Hurricane Katrina claims and their disclosure of such information to counsel for Hurricane Katrina insurance claimants. State Farm's discovery into, and vigorous litigation of, these issues has already resulted in the disqualification of a number of law firms and the disqualification of the Relators as witnesses in Hurricane Katrina claims litigation. It is impossible to imagine that State Farm has any legitimate need for more information on these points from TRG, such that the balancing test required by *Flanagan*, *supra*, tips in its favor.

Finally, of course, even if relevant all or nearly all of the documents that TRG has concerning the Relators and the State Farm companies consist of, or are contained in, communications with the law firms identified in Requests 1-9. The relevance, privilege and work product issues discussed in Section IV.B.1, above, therefore apply with equal force to Requests 14, 16 and 17.

### 4. Documents Concerning E.A. Renfroe, Forensic Analysis and Haag Engineering

Discussions between counsel have resulted in State Farm's agreement to limit Requests 18-20 of the subpoena to documents concerning the McIntosh claim.

This agreement, while seemingly helpful to address relevance issues, is nevertheless undermined by the fact that the three companies were engaged by State Farm to handle Hurricane Katrina claims, including the McIntosh claims.  Presumably every piece of relevant information relating to the McIntosh claims – especially insofar as it bears on the Relators' allegation that State Farm falsely submitted a flood damage claim to the United States under the SFIP program -- is already in the possession of State Farm or its agents.  Furthermore, as discussed above, the two related cases involving the Rigsbys' improper conduct while employed by E.A. Renfroe, and the McIntoshes' own claim litigation against State Farm, have undoubtedly produced extensive discovery relating to the McIntosh claims and the Rigsbys' knowledge and conduct concerning them.  As is the case with other Requests, it is impossible to imagine that State Farm has any legitimate need for more information on these points from TRG, such that the balancing test required by *Flanagan, supra,* tips in its favor.  Last, the relevance, privilege and work product issues discussed in Section IV.B.1, above, apply with equal force to Requests 18-20.

### C.    Attorneys Fees

Rule 45(c)(1) states that the Court "must enforce" the issuing party's duty to take reasonable steps to avoid under burden or expense on a person subject to a subpoena.  The Court must also "impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply."

The foregoing discussion demonstrates that State Farm did not comply with its Rule 45(c) obligations.  Accordingly, an award of TRG's reasonable attorneys fees and expenses is appropriate. *See Alberts v. HCA, Inc.*, 405 B.R. 498, 502-503 (D.D.C. 2009).

## V.   Conclusion

For these reasons, it is clear that State Farm has not taken "reasonable steps" to "avoid imposing undue burden and expense" on TRG.   The information State Farm seeks is not relevant to the claims and defenses currently pending in the Underlying Litigation, and the subpoena is therefore burdensome. *See Meijer, supra.*  By itself, the irrelevance of the information would merit quashing the subpoena.  Strengthening TRG's position, though, are the facts that much of the information sought is or may be privileged, and that State Farm does not appear to have any legitimate need for the information due to its prior discovery in this and other cases. *See Flannagan, supra.*  Notably, in his Memorandum Opinion issued in connection with the Stay Order in the Underlying Litigation, District Judge Senter recognized that the parties' need for further discovery was very limited, stating: "In light of the extensive discovery that has already been conducted with respect to [the McIntosh claim], I do not believe there will be much in the way of additional preparation necessary to bring this case to trial."  **Exh. D**, Mem. Op. at 10.

Therefore, Rule 45(3)(c)(A) requires that the Court quash or modify the subpoenas served on The Rendon Group.

Respectfully Submitted,

_____
Russell J. Gaspar, D.C. Bar No. 229781
Andrew Wible, D.C. Bar. No. 988391
COHEN MOHR, LLP
Suite 504, 1055 Thomas Jefferson St., N.W.
Washington, D.C.  20007
(202) 342-2550 (Telephone)
(202) 342-6147 (Facsimile)
rgaspar@cohenmohr.com

Attorneys for The Rendon Group, Inc.

- 14 -