UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE RENDON GROUP, INC.,**<br><br>　　　　　　Petitioner,<br><br>　v.<br><br>**CORI RIGSBY,** *et al.***,**<br><br>　　　　　　Interested Party,<br><br>　v.<br><br>**STATE FARM MUTUAL INSURANCE COMPANY,**<br><br>　　　　　　Respondent. | No. 1:10-mc-00164 (HHK/JMF)<br><br>Underlying Litigation:<br>Case No. 1:06cv0433 LTS-RHW<br>United States District Court<br>Southern District of Mississippi |

**MEMORANDUM OPINION**

　　　　This case involves the records in the possession of a public relations firm that provided service to lawyers in Mississippi.

　　　　The complicated story begins with the Rigsby sisters, who, while working as claims adjusters for E. A. Renfroe & Company, a contractor for State Farm Mutual Insurance Company ("State Farm"), found information that they claim showed that State Farm was defrauding the United States in the manner in which it was processing the claims that the insureds were making for damage to their homes and businesses caused by Hurricane Katrina. Several law firms in Mississippi then began to investigate and prosecute claims by those insureds against State Farm. The Rigsby sisters also brought a *qui tam* action against State Farm in Mississippi. The law firms in Mississippi hired The Rendon Group, Inc. ("TRG"), a Washington D.C.-based public relations firm, which

apparently had the obligation to create a favorable public atmosphere for the lawsuits that the Scruggs Law Firm, P.A. ("Scruggs") and other law firms who were bringing or going to bring in relation to Hurricane Katrina. The atmosphere became a lot less favorable to the Rigsbys and the law firms when an Alabama court was convinced that the Rigsby sisters had illegally taken from State Farm the documents upon which the law firms were predicating their claims against State Farm. Additionally, there was an apparent public disclosure that the Rigsby sisters had accepted a large amount of money from Scruggs for their services as plaintiffs. To make it all the more interesting, Richard "Dickie" Scruggs, the head of Scruggs, has since gone to jail for bribing a judge in what I can only hope is an unrelated matter. The Scruggs law firm[1] has since dissolved.

In the meanwhile, the *qui tam* action has been distilled to a single claim by the Rigsby sisters pertaining to a single home on the Gulf Coast, "the McIntosh House." Motion to Quash or Modify Subpoena for Documents [#1] ("Mot. to Quash") at Ex. D. State Farm filed a counter-claim against the Rigsby sisters, premised on their misappropriation of confidential State Farm information relating to Hurricane Katrina claims and their subsequent improper disclosure of this information to lawyers representing Hurricane Katrina claimants.[2] Mot. to Quash at Ex. C. The trial of the *qui*

---

[1] A mysterious entity, said to be a successor to the Scruggs Law Firm, P.A., SLF, Inc., a corporation not engaged in the practice of law, has also sought to intervene. Its standing is a riddle. Since TRG is resisting the subpoena, it adequately protects whatever interest this entity could claim and there is no warrant for its intervention. See Fed. R. Civ. P. 24(a). Further, to the extent SLF, Inc. seeks to intervene to protect its interest in documents related to the defense of its members from criminal contempt charges, I believe that those documents are squarely outside of the scope of discovery ordered by the court in Missippippi, and I find, for the reasons discussed herein, that TRG will not have to produce such documents. I therefore will deny the motion to intervene.

[2] A court in Alabama, in separate litigation, E.A. Renfroe & Company, Inc. v. Cori Rigsby, et al., No. 2:06-cv-1752-SLB, considered the propriety of taking the documents

*tam* action and counter-claim have been bifurcated and discovery stayed on the counter-claims until after the trial of the *qui tam* action, set for December 2010. Mot. to Quash at Ex. E.

State Farm served a subpoena *duces tecum* on TRG that sought records pertaining to work it did for the Mississippi firms, including, of course, Scruggs. Mot. to Quash at Ex. A. Efforts to narrow the scope of the subpoena failed,[3] and TRG has moved to quash it. Mot. to Quash 1.

## I. Legal Standard

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). If, however, the discovery sought, in this case through a subpoena to a third party, "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or [ ] subjects a person to undue burden," the third party may move to quash the subpoena under Rule 45 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 45(c)(3); see also Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984). Rule 26 of the Federal Rules of Civil Procedure defines and governs the scope of discovery for all discovery devices, and, therefore, Rule 45 must be read in light of it. 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2452 at 392-393 (3d ed. 2008); see also Briggs v. Wash. Metropolitan Area Transit Auth., No. 01-CV-1876, 2005 WL 357190, at *5 (D.D.C. Feb. 15, 2005) (citing Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1023 (Fed. Cir. 1986)

---

and issued an order of permanent injunction requiring the Rigsbys to return the State Farm documents.

[3] See Reply Memorandum of The Rendon Group, Inc. [#9] ("Reply") at Ex. H

(noting that Rule 45 must be read in light of Rule 26(b)).  Thus, "courts generally employ a balancing test, weighing the burdensomeness to the moving party against the [issuing party's] need for, and the relevance of, the information being sought." Flanagan v. Wyndham Intern. Inc., 231 F.R.D. 98, 102-03 (D.D.C. 2005) (citing Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985); Wyoming v. U.S. Dep't. of Agric., 208 F.R.D. 449, 452-53 (D.D.C. 2002); Alexander v. FBI, 186 F.R.D. 71, 75 (D.D.C. 1998);  Insulate Am. v. Masco Corp., 227 F.R.D. 427, 432 (W.D.N.C. 2005)).

## II. Analysis

TRG seeks to quash the subpoena *duces tecum* first on the grounds that the records may be protected by the attorney-client privilege. Mot. to Quash 8-10.  TRG cannot, however, assert this claim; no one is claiming that there was ever an attorney-client privilege between TRG and the Mississippi firms.  The firms' clients were, one supposes, State Farm insureds who sued State Farm or who were once relators in the *qui tam* action.  The Rigsby sisters were only the latter.  Those persons might or might not have grounds to claim an attorney-client privilege for information in the possession of their lawyers that reflects a confidential communication between them for the purpose of seeking legal advice or securing legal services.  Had such a claim been asserted by such persons, it would then be pertinent to explore whether the lawyers' transmittal of privileged information to a public relations firm was or was not a communication that vitiated or forfeited the privilege.  See Fed. Trade Comm'n v. GlaxoSmithKline, 294 F.3d 141, 147-48 (D.C. Cir. 2002); Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc., No. 03-CV-2662, 266 F.R.D. 1, 8 (D.D.C. 2010).  It hardly follows, however, that a third party can claim a privilege that it has never held.

Indeed, the only putative holder of the privilege who has communicated its intentions, the Rigsby sisters, has sent a letter, made available to me, in which they, by their counsel, insist that they will not intervene and assert any claim of privilege. See Supplemental Support for Motion to Quash [#19] at Ex. 1 ("Rigsby Letter"). They suggest, however, that they expect TRG to protect their interests:

> [N]either the Rigsbys nor their current counsel can, without risk to their best interests, specifically assert privilege claims as to individual documents in the Rendon Group's possession. The review necessary to permit such assertions would risk the taint [related to the issues that caused the disqualification of the Rigsbys' prior counsel] we need to avoid. But, the Rigbsbys clearly have rights to maintain the privileged nature of communications with their prior counsel and the professionals retained by prior counsel. The Rigsbys do not waive any of their rights to privilege. The Rigsbys expect prior counsel and professionals retained by prior counsel to protect those privilege, and the Rigsbys generally support efforts to do so.

Rigsby Letter 1.

Thus, we have the curious situation where the only parties with actual standing to assert an attorney-client privilege have insisted that they will not intervene and claim it. As counsel for State Farm put it so well at the hearing, they cannot pass it off to TRG and tell TRG to assert that privilege on their behalf, while they sit on the sidelines.

Second, TRG claims that the subpoena is overly burdensome. Like every other judge who has been confronted by such a claim, I refuse to consider it without a detailed showing by affidavit specifying the actual burdens that it will incur if it has to comply. See Miller v. Holzmann, 240 F.R.D. 1, 3 (D.D.C. 2006) (citing Pleasants v. Allbaugh, 208 F.R.D. 7, 12 (D.D.C. 2002)). But, prior cases where I have demanded such affidavits were cases that involved discovery between the parties and not discovery directed at a

5

third party, where there should be a greater sensitivity to the potential burden that will be imposed on a third party, even if that party could and should have made a greater showing of the burdens it will endure.  2006 Advisory Committee Notes.  The subpoena as written, requests the following information:

1. All Documents concerning any communications between The Rendon Group Incorporated and Scruggs Katrina Group from August 29, 2005 to the present.

2. All Documents concerning any communications between The Rendon Group Incorporated and Scruggs Law Firm, P.A. from August 29, 2005 to the present.

3. All Documents concerning any communications between The Rendon Group Incorporated and Graves, Bartle & Marcus, LLC from August 29, 2005 to the present.

4. All Documents concerning any communications between The Rendon Group Incorporated and Bartimus, Frickleton, Robertson & Gorny, PC from August 29, 2005 to the present.

5. All Documents concerning any communications between The Rendon Group Incorporated and Zuckerman Spaider LLP including Andrew N. Goldfarb, Cyril V. Smith, III, Michael R. Smith, and/or William W. Taylor, III.

6. All Documents concerning any communications between The Rendon Group Incorporated and White, Arnold & Dowd, PC including George H. Hawley and/or Katherine Rogers Brown.

7. All Documents concerning any communications between The Rendon Group Incorporated and Battle, Fleenor, Green, Winn & Clemmer, LLP including Harlan F. Winn, III, Robert E. Battle, and/or Jon H. Patterson.

8. All Documents concerning any communications between The Rendon Group Incorporated and Bainbridge, Mims, Rogers & Smith, LLP including Bruce F. Rogers and/or Frank M. Bainbridge.

9. All Documents concerning any communications between The Rendon Group Incorporated and Keker & Van Next, LLP including John Keker and/or Brook Dooley.

10. All Documents concerning any payments from Scruggs Katrina Group to The Rendon Group Incorporated from August 29, 2005 to the present.

11. All Documents concerning any payments from Scruggs Law Firm, P.A. to The Rendon Group Incorporated from August 29, 2005 to the present.

12. All Documents concerning any payments from Graves, Bartle & Marcus, LLC to The Rendon Group Incorporated from August 29, 2005 to the present.

13. All Documents concerning any payments from Bartimus, Frickelton, Robertson & Gorny, PC and The Rendon Group Incorporated from August 29, 2005 to the present.

14. All Documents concerning the Relators.

15. All Documents concerning any communications between Scruggs Katrina Group, Scruggs Law Firm, P.A., Graves, Bartle & Marcus, LLC, Bartimus, Frickelton, Robertson, & Gorny, PC and/or Relators and any media outlet, media organization, media representative or agent, or website from August 29, 2005 to the present.

16. All Documents concerning State Farm Fire and Casualty Company and Hurricane Katrina including corresponding claims or cases.

17. All Documents concerning State Farm Mutual Automobile Insurance Company and Hurricane Katrina including corresponding claims or cases.

  18. All Documents concerning E.A. Renfroe & Company and Hurricane Katrina including corresponding claims or cases.

  19. All Documents concerning Forensic Analysis Engineering Corporation and Hurricane Katrina including corresponding claims and cases.

  20. All Documents concerning Haag Engineering Co. and Hurricane Katrina including corresponding claims or cases.

Mot. to Quash at Ex. 1.

  In this case, there has been a sufficient narrowing of the *qui tam* claims and the bifurcation of the counter-claims to determine, in light of both Rule 26 and Rule 45 of the Federal Rules of Civil Procedure, that compliance with the subpoena, as written, would be overly burdensome for TRG. Applying a balancing test, "weighing the burdensomeness to the moving party against the [issuing party's] need for, and the relevance of, the information being sought," I cannot come to the conclusion that State Farm's need for the information, nor the relevance of the information, is sufficient to overcome the great burden of producing such a broad amount of information. See Flanagan, 231 F.R.D. 98 at 102-03. In its oral argument, State Farm emphasized its need for information that would demonstrate the Rigsbys' bias. The list of documents sought in the subpoena would not only result in the production of documents relevant to the bias, but thousands of documents completely unrelated to it. The narrowing of the discovery in the underlying *qui tam* litigation and the bifurcation of that cause of action from State Farm's counterclaim adds weight to the balance in favor of TRG. Thus, I will authorize that the production pursuant to the subpoena be limited. I will begin with the Rigsby sisters themselves and require TRG to produce the following:

1. All documents concerning the Relators, Ms. Cori (Moran Rigsby) and Ms. Kerri Rigsby.

2. All documents concerning the False Claims Act action filed by the Relators.

Once that production has taken place, and State Farm has had sufficient opportunity to analyze what it has received, it may appeal to me to enforce more of the terms of the subpoena as originally issued.

An order accompanies this memorandum opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE